**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KARI LAKE; MARK FINCHEM, | No. 22-16413 |
| *Plaintiffs-Appellants*, | D.C. No. 2:22-cv-00677-JJT |
| v. | |
| ADRIAN FONTES, Arizona Secretary of State; BILL GATES, as a member of the Maricopa County Board of Supervisors; CLINT HICKMAN, as a member of the Maricopa County Board of Supervisors; JACK SELLERS, as a member of the Maricopa County Board of Supervisors; THOMAS GALVIN, as a member of the Maricopa County Board of Supervisors; STEVE GALLARDO, as a member of the Maricopa County Board of Supervisors; MARICOPA COUNTY BOARD OF SUPERVISORS; REX SCOTT, as a member of the Pima County Board of Supervisors; MATT HEINZ, as a member of the Pima County Board of Supervisors; SHARON BRONSON, as a member of the Pima County Board of | OPINION |

Supervisors; STEVE CHRISTY, as a
member of the Pima County Board of
Supervisors; ADELITA GRIJALVA,
as a member of the Pima County
Board of Supervisors,

*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted September 12, 2023
Phoenix, Arizona

Filed October 16, 2023

Before:  Ronald M. Gould, Andrew D. Hurwitz, and
Patrick J. Bumatay, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Civil Rights/Elections

The panel affirmed the district court's dismissal for lack of standing of an action, brought before the 2022 general election by former Republican nominees for Governor and Secretary of State of Arizona, alleging that Arizona's use of electronic tabulation systems violated the federal Constitution.

The gravamen of Plaintiffs' operative complaint is that notwithstanding safeguards, electronic tabulation systems are particularly susceptible to hacking by non-governmental actors who intend to influence election results. On appeal, Plaintiffs conceded that their arguments were limited to potential future hacking, and not based on any past harm.

The panel held that because Plaintiffs are no longer nominated candidates for state office and no longer seek relief related to the 2022 election, they likely now lacked standing on that ground. But even assuming Plaintiffs could continue to claim standing as prospective voters in future elections, they had not alleged a particularized injury and therefore failed to establish the kind of injury Article III requires. None of Plaintiffs' allegations supported a plausible inference that their individual votes in future elections will be adversely affected by the use of electronic tabulation, particularly given the robust safeguards in Arizona law, the use of paper ballots, and the post-tabulation retention of those ballots. The panel concluded that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

speculative allegations that voting machines may be hackable were insufficient to establish an injury in fact under Article III.

## COUNSEL

Andrew D. Parker (argued), Parker Daniels Kibort LLC, Minneapolis, Minnesota; Kurt Olsen, Olsen Law PC, Washington, D.C.; for Plaintiffs-Appellants.

Kara M. Karlson (argued), Deputy Attorney General, Arizona Attorney General's Office, Phoenix, Arizona; Craig A. Morgan, Shayna G. Stuart, and Jake T. Rapp, Sherman & Howard LLC, Phoenix, Arizona; for Defendant/Appellee Arizona Secretary of State Adrian Fontes

Emily M. Craiger (argued), Burgess Law LLC, Phoenix, Arizona; Rachel H. Mitchell, Maricopa County Attorney; Thomas P. Liddy, Joseph J. Branco, Joseph E. La Rue, and Karen J. Hartman-Tellez, Deputy County Attorneys; Maricopa County Attorney's Office, Civil Services Division, Phoenix, Arizona; for Maricopa County Defendants-Appellees Bill Gates, Clint Hickman, Jack Sellers, Thomas Galvin, and Steve Gallardo.

Laura Conover, Pima County Attorney; Daniel Jurkowitz, Deputy County Attorney; Pima County Attorney's Office, Civil Division, Tucson, Arizona; for Pima County Defendants-Appellees Rex Scott, Matt Heinz, Sharon Bronson, Steve Christy, and Adelita Grijalva.

## **OPINION**

PER CURIAM:

Kari Lake and Mark Finchem ("Plaintiffs"), the Republican nominees for Governor and Secretary of State of Arizona, filed this action before the 2022 general election, contending that Arizona's use of electronic tabulation systems violated the federal Constitution.[1] The district court dismissed their operative first amended complaint for lack of Article III standing. *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1027–29 (D. Ariz. 2022).

Plaintiffs' candidacies failed at the polls, and their various attempts to overturn the election outcome in state court have to date been unavailing.[2] On appeal, they no longer seek any relief concerning the 2022 election, but instead seek to bar use of electronic tabulation systems in future Arizona elections. We agree with the district court that Plaintiffs' "speculative allegations that voting machines may be hackable are insufficient to establish an injury in fact under Article III," *Lake*, 623 F. Supp. 3d at 1029, and affirm.

I.

Arizona authorized electronic tabulation of election ballots in 1966. *See* H.B. 204, 27th Leg., 2d. Reg. Sess.

---

[1] Plaintiffs raised no federal statutory claims and have withdrawn the state law claims raised in their operative complaint on appeal.

[2] *See, e.g.*, *Lake v. Hobbs*, 525 P.3d 664 (Ariz. Ct. App. 2023); Order, *Finchem v. Fontes*, No. CV 23-0064 (Ariz. Ct. App. Aug. 1, 2023).

(Ariz. 1966).[3]   Under the Arizona election system, voters mark their choices on paper ballots, which are then fed into electronic machines for tabulation.  Ariz. Rev. Stat. §§ 16-462, 16-468(2), 16-502(A).[4]  Before being certified for use in elections, the tabulation machines are tested by an accredited laboratory and the Secretary of State's Certification Committee.  Ariz. Rev. Stat. § 16-442; *see also*§16-552 (identical testing requirement for tabulation of early ballots).  The certified machines are then subjected to pre-election logic and accuracy tests by the Secretary of State and the election officials of each county.  Ariz. Rev. Stat. § 16-449; Ariz. Sec'y of State, 2019 Election Procedures Manual ("2019 EPM") at 86.[5]

After tabulation by machines, the paper ballots cast by each voter are retained for post-election audits and possible recounts. After an election, political party representatives

---

[3] Like the district court, we take judicial notice of relevant Arizona statutes and the Secretary of State's 2019 Election Procedures Manual. *See* Fed. R. Evid. 201(b); *Lake*, 623 F. Supp. 3d at 1023 n.5.  We find it unnecessary to rely on any testimony from the preliminary injunction hearing.  *See id.* at 1023 (citing testimony from preliminary injunction hearing).

[4] Despite the state-law requirement that voters mark paper ballots, the operative complaint requested that the district court mandate use of "paper ballots" in the 2022 general election.  Plaintiffs' attorneys were sanctioned in part for "misrepresentations about Arizona's use of paper ballots."  *Lake v. Hobbs*, 643 F. Supp. 3d 989, 1001 (D. Ariz. 2022). Appeals of that sanctions order are pending separately.  *See Lake v. Gates, et. al.*, No. 23-16022 (9th Cir. *appeal docketed* Jul. 24, 2023); *Lake v. Gates, et. al.*, No. 23-16023 (9th Cir. *appeal docketed* Jul. 24, 2023).

[5] The current manual does not differ from the 2019 Manual in any respect relevant to this opinion.  *See* Ariz. Sec'y of State, 2023 Election Procedures Manual.

conduct a sample hand count of the paper ballots under the oversight of county elections departments.  Ariz. Rev. Stat. § 16-602.  The counties then perform additional logic and accuracy testing.  2019 EPM at 235.  Arizona law mandates a recount whenever the margin between the top two candidates "is less than or equal to one-half of one percent of the number of votes cast for both such candidates or on such measures or proposals."  Ariz. Rev. Stat. § 16-661.

When not in use, the hardware components of electronic tabulation systems are inventoried, stored in secure locations, and sealed with tamper-resistant seals.  2019 EPM at 95–96.  An electronic tabulation system may not be connected to the internet, wireless communications devices, or external networks and may "not contain remote access software or any capability to remotely-access the system." 2019 EPM at 96.

## II.

The gravamen of Plaintiffs' operative complaint is that notwithstanding safeguards, electronic tabulation systems are particularly susceptible to hacking by non-governmental actors who intend to influence election results.  Although the operative complaint cites opinions by purported experts on manipulation risk and alleges that difficulties have occurred in other states using electronic tabulation systems, it does not contend that any electronic tabulation machine in Arizona has ever been hacked.  And, on appeal, counsel for Plaintiffs conceded that their arguments were limited to potential future hacking, and not based on any past harm.

## A.

The district court held that, even accepting the factual allegations of the operative complaint as true, Plaintiffs had

not established Article III standing to sue. *Lake*, 623 F. Supp. 3d at 1029. Article III requires, at an "irreducible constitutional minimum," that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff must demonstrate a "concrete and particularized" and "actual or imminent" "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. A "concrete" injury must be "real," *Spokeo*, 578 U.S. at 340, and an "imminent" one must be "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "[A]n abstract, theoretical concern will not do." *Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020).

An injury is "particularized" when it impacts a plaintiff in a "personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "An interest shared generally with the public at large in the proper application of the Constitution and laws will not do." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997); *see also Pierce*, 965 F.3d at 1089.

1.

Plaintiffs assert standing as the nominated candidates of their party and as voters. Because Lake and Finchem are no longer nominated candidates for state office and no longer seek relief related to the 2022 election, they likely now lack standing on that ground. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation."). But even assuming Plaintiffs can continue to claim standing

as prospective voters in future elections, they have not established the kind of injury Article III requires.

We note as an initial matter that the precise nature of Plaintiffs' claimed injury is not clear. Although Plaintiffs contend that the use of electronic tabulation systems denies them a "fundamental right" to vote, they do not allege that the State has in any way burdened their individual exercise of the franchise. *See, e.g.*, *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665–66 (1966) (finding a fee an unconstitutional burden on the right to vote). Nor do they claim that the Arizona system discriminates against them because of race, sex, inability to pay a poll tax, or age. *See* U.S. Const. amends. XV, XIX, XXIV, or XXVI.

Moreover, Plaintiffs do not appear to allege a particularized injury. They do not allege that the tabulation of *their* votes will be manipulated. Rather, as the district court noted, they at most assert a "generalized interest in seeing that the law is obeyed," an interest that "is neither concrete nor particularized." *Lake*, 623 F. Supp. 3d at 1028 (cleaned up); *see also Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (finding no particularized injury in voters' challenge to districting plan where "only injury" alleged was that law "has not been followed.").

And, to the extent that Plaintiffs assert a constitutional right to a certain level of accuracy in the Arizona tabulation system, their claim plainly fails. [6]   "[I]t is the job of

---

[6] Plaintiffs cite the "Cyber Ninjas" hand-count audit of Maricopa County votes in 2020 authorized by the Arizona Senate. But, they overlook the audit report's conclusion that "there were no substantial differences between the hand count of the ballots provided and the official election canvass results for Maricopa County." *Maricopa County Forensic*

democratically elected representatives to weigh the pros and cons of various balloting systems," recognizing that "[n]o balloting system is perfect." *Weber v. Shelley*, 347 F.3d 1101, 1106–07 (9th Cir. 2003). Indeed, "the possibility of electoral fraud can never be *completely* eliminated." *Id.* at 1106.

### 2.

In any event, the district court correctly held that Plaintiffs, who claim no past injury, failed to establish that a future injury was either imminent or substantially likely to occur. "Where there is no actual harm . . . its imminence (though not its precise extent) must be established." *Lujan*, 504 U.S. at 564 n.2. Article III requires a "certainly impending" injury or, at the very least, a "substantial risk that the harm will occur," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

Plaintiffs simply have not plausibly alleged a "real and immediate threat of" future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Rather, as the district court noted, they posit only "conjectural allegations of potential injuries." *Lake*, 623 F. Supp. 3d at 1032. Their operative complaint relies on a "long chain of hypothetical contingencies" that have never occurred in Arizona and "must take place for any harm to occur—(1) the specific voting equipment used in Arizona must have 'security failures' that allow a malicious actor to manipulate vote totals; (2) such an actor must actually manipulate an election; (3) Arizona's specific procedural safeguards must fail to detect the manipulation; and (4) the manipulation

---

*Election Audit, Volume I*, at 1 (Sept. 24, 2021), https://perma.cc/B4EA-U683.

must change the outcome of the election." *Id.* at 1028. This is the kind of speculation that stretches the concept of imminence "beyond its purpose." *Lujan*, 504 U.S. at 564 n.2. Plaintiffs' "conjectural allegations of potential injuries," *Lake*, 623 F. Supp. 3d at 1032, are insufficient to plead a plausible "real and immediate threat of" election manipulation, *Lyons*, 461 U.S. at 103.

In the end, none of Plaintiffs' allegations supports a plausible inference that their individual votes in future elections will be adversely affected by the use of electronic tabulation, particularly given the robust safeguards in Arizona law, the use of paper ballots, and the post-tabulation retention of those ballots.[7] The district court correctly dismissed the operative complaint for lack of Article III standing.[8]

## III.

The judgment of the district court is **AFFIRMED**.

---

[7] *Curling v. Kemp*, a decision cited by Plaintiffs finding plausible an allegation of a "future hacking event," 334 F. Supp. 3d 1303, 1316, 1320 (N.D. Ga. 2018), is not to the contrary. The plaintiffs in that case alleged that the electronic system at issue "was *actually* accessed or hacked multiple times." *Id.* at 1314. And, the electronic machines used in Georgia did "not create a paper trail." *Id.* at 1308. In Arizona, "every vote cast can be tied to a paper ballot." *Lake*, 623 F. Supp. 3d at 1028 n.13.

[8] We therefore find it unnecessary to address the district court's holding that the complaint must also be dismissed under the Eleventh Amendment for failure to plausibly allege a constitutional violation. *See Lake*, 623 F. Supp. 3d at 1032.